**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | | | |
|---|---|---|---|
| ROBERT H. ADAIR *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 00-0566 (RMU) |
| | : | | |
| GORDON R. ENGLAND, | : | Document No: | 139 |
| Secretary of the Navy *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

_____

| | | | |
|---|---|---|---|
| CHAPLAINCY OF FULL GOSPEL | : | | |
| CHURCHES *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 99-2945 (RMU) |
| | : | | |
| GORDON R. ENGLAND, | : | | |
| Secretary of the Navy *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

DENYING THE PLAINTIFFS' MOTION FOR A
TEMPORARY RESTRAINING ORDER

**I.   INTRODUCTION**

The plaintiffs in this consolidated case are current and former Navy chaplains and an

ecclesiastical endorsing agency for military chaplains.  The plaintiffs charge that the hiring,

retention and promotion policies of the Navy Chaplain Corps demonstrate an unconstitutional

endorsement of liturgical Christian sects over non-liturgical Christian sects.  Currently before the

court is the plaintiffs' motion for a temporary restraining order ("TRO"), filed on February 24,

2006.[1]  This is the plaintiffs' sixth motion for extraordinary interim relief in this case.  The plaintiffs move the court to block the Navy from discharging plaintiff Michael Belt and other naval chaplains from active duty on March 1, 2006.[2]  This motion is linked to the plaintiffs' motion for declaratory judgment and/or partial summary judgment filed the same day.  In the declaratory judgment motion, the plaintiffs assert that the personnel composition of promotion selection boards violates the Establishment Clause.  This harms the plaintiffs (who were not selected for promotion), they argue, because, as they so un-eloquently state, "a Jew is unlikely to represent a Muslim's interests."[3]

Because the plaintiffs fail to demonstrate a substantial likelihood of success on the merits or irreparable injury, the court denies the plaintiffs' motion for a TRO.

---

[1]  The court ordered expedited briefing; the defendants' opposition was due by February 27, 2006 at 2:00 p.m. and the plaintiffs' reply was due by February 28, 2006 at 9:00 a.m.  Minute Order(Feb. 24, 2006).  The parties having filed their briefs, the plaintiffs' motion is ripe for review.

[2]  Besides plaintiff Belt, the plaintiffs indicate that the defendant plans on discharging naval chaplain Rene Porter-Stewart.  Pls.' Mot. at 3.  The plaintiffs previously moved the court to add Porter-Stewart as a plaintiff in this case, a request the court denied.  Order (July 16, 2003).  For this reason, the plaintiffs' references to Porter-Stewart in the present motion is troubling.  The plaintiffs state that because the court denied their request to add Porter-Stewart without prejudice, they "have been waiting for an appropriate time to resubmit their request."  Pls.' Reply at 17.  Perhaps an appropriate time for such a motion was *before* they began representing Porter-Stewart in this action.  Presently, Porter-Stewart is not a plaintiff in this case.  The court notes, however, that were it to evaluate Porter-Stewart's claims, those claims would fail for the reasons stated herein; principal among them being that the plaintiffs do not proffer any evidence or argument that Porter-Stewart will be irreparably harmed.

[3]  In light of the fact that the issues presented here concern Christianity and its competing denominations, the plaintiffs' reference to deeply rooted and inter-cultural animosities, particularly invoking those of Judaism and Islam, more than overstates the point, it borders on the inappropriate.

## II.   BACKGROUND

### A.   Factual Background

Because the court has published nearly a dozen opinions in this case, the court will dispense with a full recitation of the lengthy and convoluted factual and procedural background of this case.[4]   In this consolidated action, the plaintiffs' claims fall into three principal categories: First Amendment Establishment Clause claims, Free Exercise Clause claims and Equal Protection Clause claims.   *Adair v. England*, 183 F. Supp. 2d 31, 41 (D.D.C. 2002).   First, the plaintiffs charge that the Navy has established and maintained an unconstitutional religious quota system that permits them to hire, promote and retain chaplains from liturgical denominations at a rate greater than the liturgical Christians' representation among all Navy personnel.   *Id.* at 41-42.   Second, the plaintiffs allege a variety of constitutional problems with the Navy's chaplain-promotion system, including placing more than one Catholic chaplain on promotion boards, the use of chaplains to rate other chaplains, the application of "faith group identifier" codes, and the general domination of the boards by liturgical Protestant and Catholic chaplains.   *Id.* at 42-44.   Finally, the plaintiffs assert that the Navy's discriminatory policies against, and general hostility to, non-liturgical denominations deny nonliturgical chaplains and their would-be congregants the constitutional right to free exercise of their religion.   *Id.* at 44-45.

---

[4]      For a detailed account of the factual allegations underlying both complaints, see *Adair v. England*, 183 F. Supp. 2d 31, 34-38, 40-45 (D.D.C. 2002).   In January 2001, the court's Calendar Committee transferred these cases from Judge June L. Green to this member of the court.   Prior to the transfer, and pursuant to the parties' joint recommendation, Judge Green consolidated the two cases for pretrial purposes.   Order (Sept. 26, 2000).

**B.    Procedural History**

**1.    Procedural Background**

Without expending unnecessary judicial resources providing a full exposition of the

procedural background of this case, the court notes the following.  The court currently has before

it a motion for declaratory judgment filed by the plaintiffs in August 2005.  In that motion, the

plaintiffs move the court to declare that "10 U.S.C. § 618(f) is unconstitutional and exceeds

Congress lawful powers in as much as it (1) bars Plaintiffs from taking discovery concerning

selection board misconduct from personnel on those boards who witnessed chaplain selection

boards proceedings and (2) effectively bars Plaintiffs' constitutional claims and extinguishes

their constitutional rights."  Mot. for Decl. J. (Aug. 12, 2005) at 1.  In short, that motion

concerns the plaintiffs' access (or lack thereof) to information concerning the Navy's chaplain

selection boards.

**2.    The Plaintiffs' Motion for Declaratory Judgment
and/or Partial Summary Judgment**

On February 24, 2006, the plaintiffs filed yet another motion for declaratory judgment.

In this motion, the plaintiffs challenge the Navy's chaplain promotion process.  Mot. for Decl. J.

(Feb. 24, 2006) at "Introduction."  According to the plaintiffs, every career grade promotion

board and every commander selective early retirement board from 1977 to 2002 included at least

one Catholic chaplain.[5]  *Id.* at "Introduction" & 14.  The plaintiffs characterize this consistent

inclusion of a Catholic chaplain on the promotion boards as a "de facto board policy favoring

Catholics," which enabled the "favored denomination to control the board results, prejudicing

---

[5]       Despite this broad charge, the plaintiffs do recognize limited exceptions to their
generalization.  First, because no Catholic clergy members held positions higher
than the officer under consideration, the selective and early retirement boards
from 1991 to 1994 did not contain any Catholic members.  Pls.' Mot. for Decl.
Judgment at "Introduction" n.1.

the non-preferred denominations and their chaplains such as [p]laintiffs." *Id.* at 7. The defendants were able to perpetuate this policy, the plaintiffs believe, by "keeping their actual illicit operating policies unpublished," by "cloaking their illegal behavior behind published policies that falsely averred, 'Chaplains are selected for promotion based solely on their relative competitiveness; their religious affiliation is entirely immaterial,'" and by "keeping board proceedings sealed through board confidentiality oaths and then litigating to extremes in order to hide the truth from victims, courts and the public." *Id.* at 14.

To the plaintiffs, this *de facto* policy is unlawful in three respects. First, the plaintiffs argue that this policy violates the Navy's own regulations, to wit: Department of Defense Directive 1332.32 ¶ 4.4.1; Secretary of Navy Instruction ("SECNAVINST") 1401.3; and Enclosure 1 to SECNAVINST 14.1.3, "Supplemental Guidance for U.S. Navy Selection Boards" at 3, ¶ 1.c.(1)(e) and 9, ¶ 8.c.(1)(e). Pls.' Mot. for Decl. J. (Feb. 24, 2006) at 11. Second, the plaintiffs argue that the policy violates the Establishment Clause. *Id.* at 10, 39-43. Finally, the plaintiffs contend that the Navy's preferential treatment of Catholic clergy (in their disproportionate representation on the selection board), violates the equal protection component of the Due Process Clause. *Id.* at 10.

### 3.    The Plaintiffs' Motion for a Temporary Restraining Order

The plaintiffs filed a motion for a TRO coterminous to their motion for declaratory judgment. The plaintiffs' TRO motion advocates that the court should enjoin the Navy from discharging plaintiff Michael Belt and several other naval chaplains on March 1, 2006. Pls.'

Mot. at 2.  Specifically, the plaintiffs allege that a recent change in naval policy[6] requires that the Navy terminate those service personnel who were not selected for promotion on two occasions, a group of individuals which includes plaintiff Belt.  *Id.* at 2.  According to the plaintiffs, they failed to receive promotions on two occasions because of the defendants' unconstitutional promotion board practices.  *Id.* at 4-6.  For this reason, the plaintiffs ask the court to enjoin the Navy from discharging plaintiff Belt as currently scheduled until such time as the court can rule on the underlying legal issues argued in the plaintiffs' motion for declaratory judgment.  The court turns to the plaintiffs' motion for a TRO.

### III.   ANALYSIS

#### A.   Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates:

> (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000).  It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits.  *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam).  Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's

---

[6]   The defendants counter that the Navy must discharge Belt not due to a recent change in naval policy but due to 10 U.S.C. § 632, which provides that lieutenants or lieutenant commanders who have twice failed selection for promotion to the next higher grade shall, except in limited circumstances, be discharged.  Defs.' Opp'n at 1 (citing 10 U.S.C. § 632).

intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor. *CSX Transp., Inc. v. Williams*, 406 F.3d 667 (D.C. Cir. 2005) (citing *CityFed Fin. Corp.*, 58 F.3d at 747). "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.*, 58 F.3d at 747.

Moreover, the other salient factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction. *CityFed Fin. Corp.*, 58 F.3d at 747 (quotation omitted). Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *Id.*

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted). Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm shown. *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990) (citation omitted).

**B.   The Court Denies the Plaintiffs' Motion for a TRO**

**1.   The Plaintiffs Fail to Demonstrate a Substantial
Likelihood of Success on the Merits**

The plaintiffs allege that they have demonstrated a substantial likelihood of success on
their motion for declaratory judgment.  Pls.' Mot. at 4-7.  The plaintiffs' motion for declaratory
judgment challenges the Navy's personnel lineup in its chaplain selection boards.  Pls.' Mot. for
Decl. J. (Feb. 24, 2006) at 13 (stating that the undisputed evidence shows that the Navy had "an
unwritten but ironclad policy that reserved at least one Catholic seat on each chaplain selection
board . . .").  They argue that because this court will apply strict scrutiny to any practice
demonstrating a denominational preference, it will likely rule that this policy violates the
Establishment Clause.  Pls.' Mot. at 5 (citing *Adair v. England*, 217 F. Supp. 2d 7, 14 & 15
(D.D.C. 2002)).

Through the plaintiffs' remonstrations of this "unwritten but ironclad policy," they have
forgotten to consult the court's prior rulings in this case.  If they had, the plaintiffs would have
discovered that this court previously engaged, and rejected, a similar call.  Back in 2002, "the
plaintiffs ask[ed] the court to believe that the usual rule for a chaplain sitting on a promotion
board will be to discriminate against promotion candidates on the basis of religious
denomination."  *Adair*, 183 F. Supp. 2d at 60.  In that opinion, and for reasons still valid today,
the court refused to accept that assumption.  *Id.* (citing numerous district court decisions in
support of the position that "[w]ell-settled case law instructs courts to presume that government
officials will conduct themselves properly"); *see also Larkin v. Grendel's Den, Inc.*, 459 U.S.
116, 125 (1982) (considering a claim of unchecked discretion delegated to a church and stating
that "[w]e can assume that churches would act in good faith in the exercise of their statutory
power").

Given the court's prior resolution of this issue, the plaintiffs' statement that "[a] Jew is unlikely to represent a Muslim's interest, nor is an anti-Pentecostal likely to look kindly on a Pentecostal," Pls.' Mot. for Decl. J. (Feb. 24, 2006) at 22, is not only a cynical expression of doubt, but an inappropriate one as well, in the context of this case.[7] *United States v. Kikumura*, 947 F.2d 72, 77 (3d Cir. 1991) (stating that "under the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").

The plaintiffs' likelihood of success is also undermined by the D.C. Circuit's ruling that the plaintiffs are not entitled to "civil discovery of promotion selection board proceedings." *In Re England*, 375 F.3d 1169 (D.C. Cir. 2004).  The application of the circuit court's ruling to the continued efficacy of the plaintiffs' case is presently before this court via the plaintiffs' first motion for declaratory judgment.  Given the unequivocal language of the circuit's opinion, effectively foreclosing the plaintiffs from delving into promotion board proceedings, the plaintiffs have an uphill battle in demonstrating that board members made their decisions not to promote the plaintiffs because of their religious affiliations. *Adair*, 183 F. Supp. 2d at 60.  In its 2002 Memorandum Opinion, the court noted that "[o]nly if an official *in fact* acts to infringe religious liberty in an unconstitutional manner is there a First Amendment violation that the courts can take cognizance of and, generally, remedy." *Id.*  The court continued that "when

---

[7] The court notes that the plaintiffs' own arguments undermine their tenuous claim of harm.  The plaintiffs reject the claim that "denominational representatives must be a board member to ensure fairness."  Mot. for Decl. J. at 22.  And yet, their alleged injury rests on the assumption that the plaintiffs were treated disparately because of their religious affiliation – that they did not receive promotions because either they lacked denominational representation on the promotion board or because the promotion board members made their decision on religious grounds.  The plaintiffs cannot have their wafer and eat it too.

chaplains sit on promotion boards, they act as officers who are evaluating a fellow officer's fitness for promotion." *Id.* at 62.

To summarize, the plaintiffs' success in obtaining a declaratory judgment from this court rests on their ability to demonstrate that their failure to receive a promotion was due to their religious affiliation. *Id.* at 60. But, given the legal presumption that government officials will conduct themselves properly, *id.* at 60, and the circuit court's effective foreclosure of discovery into the promotion board's proceedings, *In Re England*, 375 F.3d 1169, the court is unlikely to resolve the plaintiffs' declaratory judgment motion in their favor.[8] Accordingly, the plaintiffs fail to demonstrate a substantial likelihood of success on the merits.[9]

## 2.    The Plaintiffs Fail to Demonstrate Irreparable Injury[10]

The plaintiffs contend that, if discharged, plaintiff Belt will be irreparably harmed in two ways. First, the plaintiffs argue that violations of First Amendment rights *per se* constitute

---

[8]     The defendants argue that the court lacks subject-matter jurisdiction to entertain the plaintiffs' claim that the Navy is acting in violation of its regulations because the plaintiffs have failed to first seek administrative remedies. Defs.' Opp'n at 32; Pls.' Reply at 19-22. The court does not consider this issue here, but will address it subsequently in its ruling on the plaintiffs' motion for declaratory judgment.

[9]     The issues presented in this case are both serious and complex. As such, the court's ruling regarding the merits of the plaintiffs' declaratory judgment should not be construed as a ruling on the underlying substantive constitutional issues. The court will address those issues when it rules on the plaintiffs' two motions for declaratory judgment.

[10]     As a preliminary matter, the defendants contend that the plaintiffs knew of the March 1, 2006 discharge date in October of 2003. Defs.' Opp'n at 18. The plaintiffs attempt to mitigate this fact by noting non-plaintiff Porter-Stewart's negotiations with the Navy to extend the March 1 deadline. Pls.' Reply at 2. While the plaintiffs are correct that the existence of the negotiations indicates strongly that the March 1, 2006 separation date was "not locked in concrete three years ago," *id.*, it does not change the fact that the plaintiffs had notice of the impending separation date in 2003. The court looks skeptically on the plaintiffs' assertion of an emergency when it appears that the plaintiffs delay was the emergency's cause. *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 286 (D.D.C. 2005); *Mylan Pharm Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000).

irreparable injury.  Pls.' Mot. at 8.  Second, the plaintiffs assert that plaintiff Belt will be irreparably harmed because of his "unique medical condition," namely, that he would not be presented to a medical board which would "probably grant him a medical discharge and a pension."  *Id.* at 10.  The court will address these arguments below.

In supporting their position that First Amendment rights are *per se* irreparable, the plaintiffs cite *Wilkins v. Lehman*, slip. op. (S.D.C.A. 1985).  The *Wilkins* case, in turn, quotes *Elrod v. Burns*, 427 U.S. 347 (1976) for the proposition that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Id.* at 10.  This argument was previously brought before this court and rejected.  Mem. Op. (Feb. 7, 2005) at 6.  In its first encounter with this argument, the court noted the plaintiffs' affinity for *Elrod* and distinguished that case on its facts.  *Id.*  In *Elrod*, a local sheriff's office had an undisputed practice of replacing certain of its employees with members of the sheriff's political party when those employees did not obtain support from or affiliate with the sheriff's party.  *Elrod*, 427 U.S. at 349-51.  At play in *Elrod* was the plaintiffs' claim that they were discharged or threatened with discharge based on their political affiliation.  *Id.* at 373.  The Court, addressing the loss of First Amendment freedoms, declared that "[t]he timeliness of political speech is particularly important."  *Id.* at 374 n.29.

In the plaintiffs' first go-round with this argument, the court noted that because the defendants' policy had been the alleged practice for 13 years, "[o]ne cannot help but wonder why, in the face of more than a decade of allegedly illegal action, the plaintiffs now require immediate injunctive relief or, at the very least, cannot wait until completion of discovery or a future point when this case is more developed."  Mem. Op. (Feb. 7, 2005) at 7.  The plaintiffs apparently construe the court's previous statement as an invitation for the plaintiffs to wait a

while and re-bring the same rejected arguments.  It was not.  Although time has passed, this case

is no more developed than it was one year ago, and the law of the case doctrine applies.[11]

*Kikumura*, 947 F.2d at 77.

Second, the plaintiffs argue that irreparable injury will befall plaintiff Belt who, were he

not discharged on March 1, 2006, "would probably face a medical board which would probably

grant him a medical discharge and a pension."  Pls.' Mot. at 10.  This assertion falls flat for

numerous reasons, chief among them being that "[t]he possibility that adequate compensatory or

other corrective relief will be available at a later date, in the ordinary course of litigation, weighs

heavily against a claim of irreparable injury."  *Sampson v. Murray*, 415 U.S. 61, 60 (1974)

(stating that "[t]he key word in this consideration is irreparable" and noting that claims of loss

income or reputation fall "far short of the type of irreparable injury which is a necessary

predicate to the issuance of a temporary injunction").  The *Sampson* court did recognize "that

cases may arise in which the circumstances surrounding an employee's discharge together with

---

[11]   The court's prior ruling, re-affirmed today, is supported by the D.C. Circuit's decision in *Nat'l Treasury Employees Union v. United States*, 927 F.2d 1253, 1254 (D.C. Cir. 1991), in which the court, discussing *Elrod*, noted that an injunction is appropriate only when the party seeking relief can show that "First amendment interests [are] either threatened or in fact being impaired at the time relief [is] sought."  *Nat'l Treasury Employees Union v. United States*, 927 F.2d 1253, 1254 (D.C. Cir. 1991) (internal citations omitted) (correction in original). The plaintiffs here have not alleged that they will shed their religious affiliations before the court can resolve the plaintiffs' motion for declaratory judgment.  *Id.*, 927 F.2d at 1255 (ruling that injunctive relief was not proper because the record did not convince the court that "the appellants will cease speaking or writing before the district court resolves their constitutional challenges").  The plaintiffs attempt to distinguish *Nat'l Treasure Employees Union* on the grounds that they have presented evidence suggesting disparate unconstitutional treatment.  Pls.' Reply at 11.  The plaintiffs miss the point.  The plaintiffs' statistical evidence may lend credence to the underlying substantive claim that the Navy is violating the Establishment Clause.  The D.C. Circuit in *Nat'l Treasure Employees Union*, however, noted a lack of evidentiary support concerning the appellants' claim of irreparable harm, stating that without injunctive relief, their First Amendment rights would be chilled.  927 F.2d at 1255.  The plaintiffs have not proffered this type of evidentiary support.

the resultant effect on the employee, may so far depart from the normal situation that irreparable

injury might be found," *Sampson*, 415 U.S. at 92 n.68, and several courts in this district have

concluded that the plaintiffs in those cases have made such a showing, *Risteen v. Youth for*

*Understanding, Inc.*, 245 F. Supp. 2d 1, 16 (D.D.C. 2002) (finding irreparable injury when the

plaintiff demonstrated that he would not have access to "critical medical attention because he has

lost his health insurance"); *McVeigh v. Cohen*, 983 F. Supp. 215, 221 (D.D.C. 1998) (finding

that the plaintiff's loss of job, income, pension, health and life insurance, coupled with the

alleged "stigma" associated with his discharge from the Navy under the "Don't Ask, Don't Tell,

Don't Pursue" constituted irreparable harm); *see also Cooney v. Dalton*, 877 F. Supp. 508, 515

(D. Hi. 1995) (finding that a separation from the military constituted irreparable harm because

the discharge was categorized as "other than honorable").

Here, by contrast, the plaintiffs have pointed only to plaintiff Belt's potential eligibility

for medical discharge and pension benefits.[12]  Pls.' Mot. at 10; *Carabillo v. Ullico Inc. Oension*

*Plan and Trust*, 355 F. Supp. 2d 49, 54 (D.D.C. 2004) (stating that a finding of irreparable injury

---

[12]    Regarding plaintiff Belt's concern for loss of a medical discharge and pension
benefits, according to the government, on February 22, 2006, "the Navy directed
Belt's doctors to forward his medical records to the Navy Physical Evaluation
Board . . . for consideration of a medical discharge." Defs.' Opp'n at 2, 13.  It
appears, therefore, that regardless of this court's ruling, the plaintiff may not
suffer the harm he fears – his candidacy for medical discharge will be considered.
What's more, according to the government, Belt is entitled to an automatic 180-
day extension of his military medical benefits, *id.* at 13, a point the plaintiffs
curiously omitted from their opening motion.  The plaintiffs reply that because
the Navy's Physical Evaluation Board process typically takes 90 days, that it will
not be complete by March 1, 2006. Pls.' Reply at 3-4, 15.  While this may be
true, it does not undercut the defendants' assertion, which the court accepts at
face value and expects the defendants to honor, that Belt is entitled to and will
receive an automatic 180-day extension of his military medical benefits.  This
180-day extension should carry plaintiff Belt through the interstices between his
discharge and the Physical Evaluation Board's decision.  In short, the court
expects that the Navy will provide plaintiff Belt with the same opportunity for
benefits as if he was not discharged.

is warranted when the plaintiff "alleges a critical need for healthcare, as opposed to a mere financial hardship"). This alleged harm, without more, is insufficient to support a finding of irreparability. *Int'l Ass'n of Machinists & Aerospace Workers v. Nat'l Mediation Bd.*, 374 F. Supp. 2d 135, 142 (D.D.C. 2005) (citing *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 367 (D.C. Cir. 1999), in ruling that "a loss of income does not constitute irreparable injury because the financial loss can be remedied with money damages"). Even if the plaintiffs' proffered evidence demonstrated the financial strain that plaintiff Belt's loss of pension benefits would have on him (which they have not), "an insufficiency of savings or difficulties in immediately obtaining other employment – external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself – will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson*, 415 U.S. at 92, n.68. This statement also undercuts the plaintiffs' claim that their difficulty (although at this point purely conjectural) in pursuing alternative employment constitutes irreparable injury. Pls.' Mot. at 10.

### 3.   The Equities Counsel Against Injunctive Relief

Having concluded that the plaintiffs have failed to demonstrate either a substantial likelihood of success on the merits or irreparable injury, the court need not long discuss the equities. The plaintiffs argue that because the Navy is currently short chaplains, that injunctive relief in this case will actually benefit the Navy, by giving them more chaplains. Pls.' Mot. at 10-11. The Navy disagrees, arguing that an injunction in this case would frustrate Congress' "interest in regulating the military as it deems appropriate" through "judicial second-guessing." Defs.' Opp'n at 35. The court is not redicent to its evaluative obligation of the plaintiffs' constitutional claims, *Emory v. Secretary of the Navy*, 819 F.2d 291, 294 (D.C. Cir. 1987), and

will engage itself with dispatch if it rules that a constitutional violation exists.  But at the injunctive relief stage, before the court can definitively rule on the plaintiffs' underlying constitutional challenges, an injunction would unduly impose the court on the legislature's and the executive's military and employment prerogatives.  *See e.g. Guerra v. Scruggs*, 942 F.2d 270, 275 (4th Cir. 1991).  For this reason, the court finds that greater harm would come to the defendants in granting the injunction than would come to the plaintiffs in denying the injunction. The public has a vested interest in having this court resolve the serious constitutional questions raised by this case.  But the public has a concomitant interest in the judiciary exercising its interpretive role with delicacy and appropriate deliberation, thus ensuring that its exposition of the law is sound and just.  Granting injunctive relief on an expedited basis, as the plaintiffs' here request, would not serve that public interest.

## IV.    CONCLUSION

For the reasons outlined herein, the court denies the plaintiffs' motion for injunctive relief.  An order directing the parties in a manner consistent with this Memorandum Opinion is issued separately contemporaneously this 28th day of February 2006.


RICARDO M. URBINA
United States District Judge